NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231104-U

NO. 4-23-1104

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 9, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| JAMES SINGLETON, | ) | No. 22CF1499 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Brendan A. Maher, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Turner and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the circuit court did not abuse its discretion in granting defendant pretrial release.

¶ 2    The State appeals the circuit court's order granting defendant, James Singleton, pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (setting the Act's effective date as September 18, 2023).

¶ 3    On appeal, the State argues this court should overturn the circuit court's decision because the court erred when it determined (1) section 110-6.2 of the Code (725 ILCS 5/110-6.2

(West 2022)) applies to individuals detained on a petition to revoke conditional discharge and (2) the "defense had met its burden of showing the defendant does not pose a danger to any other person." We affirm.

¶ 4                                                    I. BACKGROUND

¶ 5            In February 2023, defendant pleaded guilty to one count of unlawful failure to register as a violent offender against youth (730 ILCS 154/10(a) (West 2022)) in exchange for the State's agreement to dismiss the remaining charges and to a sentence of 24 months' conditional discharge. Among the terms of defendant's conditional discharge was that he not violate any criminal statute or ordinance of any jurisdiction. On September 26, 2023, the State filed a petition to revoke defendant's conditional discharge, alleging defendant violated the terms of his conditional discharge by committing a battery (720 ILCS 5/12-3(a)(2) (West 2022)) against Deandra M. Richardson.

¶ 6            Eight days later, defendant filed a motion to reconsider his pretrial release conditions. In support of his motion, defendant argued his most recent battery offense was not a detainable offense under section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)). Because the legislature "used the term 'pretrial release' to refer to release of people pending petitions to revoke in [section 5-6-4(b) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-6-4(b) (West 2022))]," defendant argued the relevant provisions under article 110 of the Code, as amended, in combination with section 5-6-4 of the Unified Code suggest "a defendant is eligible to be released pending a petition to revoke [conditional discharge] following the same procedure as a defendant who is taken into custody on a new charge."

¶ 7            On October 16, 2023, the matter proceeded to a hearing on defendant's motion to reconsider. In support of his motion, defendant testified on his own behalf. According to

defendant, Richardson was "the mother of one of [his] nephews [*sic*] child." She was not someone he saw on a regular basis and, if released, defendant stated he would reside with his mother at her apartment in Rockford, Illinois. Prior to his arrest, defendant had been employed at a "KFC, Taco Bell" for approximately 30 days. However, defendant stated he recently became his mother's caregiver after she suffered two strokes and would not be returning to work. As his mother's caregiver, part of defendant's responsibilities were to "clean her," "feed her," and "make sure everything in the house is sanitized." Defendant also "ma[de] sure everything she needs is taken care of as far as groceries, pay[ing] the bills, or anything else she needs."

¶ 8        Following defendant's testimony, defense counsel proffered the pretrial interview with defendant's mother, Barbara Singleton, who indicated she and defendant were leaving her residence for the hospital when Richardson "showed up *** unannounced." When asked to leave, Richardson refused, and "at some point [Richardson] had some sort of an object in her hand." Barbara "thought it could have possibly been a hammer." Although Barbara "wasn't sure who had initiated physical contact first, *** she did say that if [Richardson] had just left *** when she was asked to leave ***, none of this would have ever happened."

¶ 9        In response, the State proffered photographs taken of Richardson on the day of the battery and described the factual basis supporting its petition to revoke, which indicated the following, in relevant part:

> "[O]n or about September 23rd of 2023, at approximately 10:12
> a.m., officers responded to 3311 Sun Valley Terrace, Apartment 10
> in response to a battery.
>
>        The victim stated that the defendant battered her and made
> her hand bleed. On arrival, the defendant was not located inside the

residence. The victim said that the defendant was her daughter's uncle. The victim stated she arrived to check on the defendant's mother, who had recently had a stroke. When the victim asked the defendant's mother if she had eaten, the defendant said he, quote, unquote got this. The defendant used a closed fist to punch the right side of the victim's face three times, which stunned her. The defendant continued to punch the victim an unknown number of times which forced her against a wall. The defendant used his foot to kick her stomach three times and pulled her to the ground by her hair.

The victim attempted to walk towards the door, but defendant continued to punch and kick her body, which caused her to fall to the ground, and at that time, the defendant kicked the victim's body and jaw area six times until a neighbor arrived to separate them.

Officers observed several cuts or scrapes to her body, three knots to the victim's forehead and one to her bottom lip. She did refuse medical treatment from Rockford Fire."

¶ 10 Ultimately, the circuit court granted defendant pretrial release pending the hearing on the State's petition to revoke his conditional discharge. Under section 110-6.2 of Code, the court determined "a person who is waiting the imposition or execution of sentence can be held without release unless the *** Court finds by clear and convincing evidence that a person is not likely to flee or pose a danger to any other person or the community." The court then noted the

lack of "any real evidence *** that [defendant] is likely to flee in this case," stating defendant "would have no good reason to flee from the courthouse because he would have a series of court dates over time as we work our way through the case that he's on conditional discharge for." Further, the court pointed out defendant resided in Rockford, obtained employment, and abandoned that employment to become caretaker for his mother, who, the court believed, gave defendant "a strong incentive not to flee from Winnebago County."

¶ 11        Despite defendant's prior history of violence, the circuit court determined defendant was "unlikely to pose a danger to any other person or to the community at large." The court also expressed doubt as to whether the State could prove its case and stated defendant's alleged battery of Richardson was unlike "random acts of violence such as bar fights and other different things." Rather, the altercation was "a family issue" that occurred when Richardson "came into the house uninvited *** at a point in time where [defendant] was already there." Defendant was also aware he was to have no contact with the victim, and the court believed defendant's "motivation of being able to care for his ailing mother would make it unlikely that [he] would pose a direct danger to Ms. Richardson."

¶ 12        The circuit court then ordered defendant released with the conditions he (1) not violate any law, (2) report to the Winnebago County court services, (3) submit himself to the orders and process of the court, (4) notify the Winnebago County circuit clerk of any change of address, and (5) have no contact with Richardson. After the court entered its written order detailing the conditions of defendant's pretrial release, the State filed its notice of appeal under Illinois Supreme Court Rule 604(h)(1)(i) (eff. Oct. 19, 2023).

¶ 13        This appeal followed.

¶ 14                                II. ANALYSIS

¶ 15    On appeal, the State argues this court should overturn the circuit court's decision because the court erred when it determined (1) section 110-6.2 of the Code (725 ILCS 5/110-6.2 (West 2022)), which governs postconviction detention, applies to individuals detained on a petition to revoke conditional discharge and (2) the "defense had met its burden of showing the defendant does not pose a danger to any other person."

¶ 16    The determination of whether pretrial release should be granted or denied is reviewed under an abuse-of-discretion standard. See *People v. Jones*, 2023 IL App (4th) 230837, ¶¶ 27, 30. "An abuse of discretion occurs when the circuit court's decision is arbitrary, fanciful or unreasonable or where no reasonable person would agree with the position adopted by the [circuit] court." (Internal quotation marks omitted.) *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9, 143 N.E.3d 833. Under this standard, a reviewing court will not substitute its own judgment for that of the circuit court simply because it would have analyzed the proper factors differently. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11.

¶ 17    The Code creates a presumption "a defendant is entitled to release on personal recognizance on the condition that the defendant attend all required court proceedings and the defendant does not commit any criminal offense, and complies with all terms of pretrial release." 725 ILCS 5/110-2(a) (West 2022). It is the State's burden "to prove by clear and convincing evidence that any condition of release is necessary." 725 ILCS 5/110-2(b) (West 2022).

¶ 18    While the State argues the circuit court erred when it determined section 110-6.2 of the Code applied to individuals detained on a petition to revoke conditional discharge, "[w]e may affirm the judgment on any basis in the record, regardless of the circuit court's rationale." *People v. Prather*, 2022 IL App (4th) 210609, ¶ 32. We note the State does not explain how the outcome would have been different or what factors the court considered improperly in

determining the defendant's eligibility for pretrial release. Moreover, the State concedes section 5-6-4 of the Unified Code provides the steps the court was permitted to take, but it asserts the Act is inapplicable to persons already convicted and serving a term of conditional discharge. However, this ignores the plain language of section 5-6-4 of the Unified Code, which directs us back to the relevant provisions under the Act when addressing an offender's pretrial release pending a hearing on his violation petition. See 730 ILCS 5/5-6-4(b) (West 2022).

¶ 19 Under section 5-6-4(b) of the Unified Code, when a petition is filed alleging a violation of a condition of conditional discharge, the circuit court "shall conduct a hearing of the alleged violation." 730 ILCS 5/5-6-4(b) (West 2022). Section 5-6-4(b) further provides the court "shall admit the offender to pretrial release pending the hearing unless the alleged violation is itself a criminal offense in which case the offender shall be admitted to pretrial release on such terms as are provided in the [Code], as amended." 730 ILCS 5/5-6-4(b) (West 2022). Thus, according to the plain language of the statute, because defendant was accused of violating the terms of his conditional discharge by committing a criminal offense, he was entitled to pretrial release on such terms as are provided in article 110 of the Code (725 ILCS 5/110-1 *et seq.* (West 2022)), as amended by the Act. See Pub. Act 101-652, § 10-280 (eff. Jan. 1, 2023) (amending 730 ILCS 5/5-6-4(b)).

¶ 20 Here, in determining which conditions of pretrial release would reasonably ensure defendant's appearance as well as the safety of any person or the community, the circuit court noted the lack of "any real evidence *** that [defendant] is likely to flee in this case." The court also considered the risk of obstruction to the criminal justice process, stating defendant "would have no good reason to flee from the courthouse because he would have a series of court dates over time as we work our way through the case that he's on conditional discharge for." See 725

- 7 -

ILCS 5/110-5(a)(5) (West 2022). Regarding defendant's history and characteristics, the court pointed out defendant resided in Rockford, obtained employment, and then abandoned that employment to become caretaker for his mother who, the court believed, gave defendant "a strong incentive not to flee from Winnebago County." See 725 ILCS 5/110-5(a)(3) (West 2022). Further, the court expressed doubt as to whether the State could prove its case (see 725 ILCS 5/110-5(a)(2) (West 2022)) and considered the circumstances surrounding the offense. The court explained defendant's alleged battery of Richardson was unlike "random acts of violence such as bar fights and other different things." Rather, the altercation was "a family issue" that occurred when Richardson "came into the house uninvited *** at a point in time where [defendant] was already there." See 725 ILCS 5/110-5(a)(1) (West 2022). Finally, the court considered the safety of the victim and noted defendant was aware he was to have no contact with the victim, stating defendant's "motivation of being able to care for his ailing mother would make it unlikely that [he] would pose a direct danger to Ms. Richardson." See 725 ILCS 5/110-5(a)(4) (West 2022).

¶ 21        Based on this record, we cannot say the circuit court abused its discretion when it granted defendant pretrial release pending the hearing on the State's petition to revoke his conditional discharge. Accordingly, the State's arguments to the contrary are meritless because the court's decision was neither "arbitrary, fanciful or unreasonable" nor one where "no reasonable person would agree with the position adopted." (Internal quotation marks omitted.) *Simmons*, 2019 IL App (1st) 191253, ¶ 9.

¶ 22                                III. CONCLUSION

¶ 23        For all these reasons, we affirm the judgment of the circuit court.

¶ 24        Affirmed.